GEORGE H. FLETCHER and Another, Respondents, *v.* THE MAN-HATTAN LIFE INSURANCE COMPANY, Appellant.

First Department, March 29, 1923.

**Mortgages** — action on alleged oral agreement by which defendant, mortgagee, was to bid in property on foreclosure and sell it to person nominated by plaintiff at stipulated price and issue to plaintiff junior participating agreement — plaintiff failed to tender performance or demand performance for five years and not until defendant had sold property to third person — plaintiff's laches preclude recovery — not necessary for defendant to plead laches when laches shown by plaintiff's proof — agreement not proven — partial performance not shown.

In an action to enforce an alleged oral agreement and for an accounting, the complaint alleged that the defendant entered into an agreement with the plaintiffs to bid in certain property at a mortgage foreclosure sale on which the defendant held the mortgage and in which mortgage the plaintiffs had a junior participating interest; that the defendant would sell and convey the premises to the plaintiffs or to a party nominated by them for an amount equal to the cost of the premises to the defendant; that the plaintiffs agreed to purchase or procure a purchaser at cost to the defendant; that the defendant agreed to issue to the plaintiffs a junior participating agreement in the mortgage to be given by the purchaser; that the defendant agreed to take title and appoint as agent to administer the property the person to be nominated by the plaintiffs; that the plaintiffs relying on said agreement refrained from bidding at the sale and duly performed the agreement on their part and have been ready, willing and able to perform the agreement at all times, and that, without notice to the plaintiffs, and in violation of their contract rights, the defendant sold and transferred the said property to a third person.

*Held,* that the delay on the part of the plaintiffs for five years after the date for closing title without any tender of performance and without any demand on the defendant to perform at any time until the defendant had conveyed the property to a third person is such laches as to preclude the plaintiffs from enforcing the agreement.

It was not necessary for the defendant to plead laches on the part of the plaintiffs, since plaintiffs' proof established the existence thereof.

Furthermore, the evidence does not establish that the defendant ever entered into the agreement alleged by the plaintiffs or that there was a partial performance of the alleged oral agreement.

APPEAL by the defendant, The Manhattan Life Insurance Company, from an interlocutory judgment of the Supreme Court in

favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 6th day of April, 1922, upon the decision of the court, rendered after a trial at the New York Special Term, directing the defendant to account to the plaintiffs for the value and the use of certain real estate, and appointing a referee to take and state such account.

*Kelly, Hewitt & Harte* [*James A. O'Gorman* of counsel; *D. Theodore Kelly* and *Howard B. Harte* with him on the brief], for the appellant.

*Fletcher, McCutchen & Brown* [*George C. Austin* of counsel], for the respondents.

PAGE, J.:

The action is brought by the plaintiffs as successors to the firm of Fletcher, McCutchen & Brown. For brevity the latter will be referred to in this opinion as plaintiffs. The defendant held a mortgage on an apartment house situated on the corner of One Hundred and Twenty-sixth street and Fifth avenue, to secure the payment of $210,000, in which the plaintiffs had a junior participating interest of $37,000. An action was brought to foreclose this mortgage, in which the defendant herein was the plaintiff, and the plaintiffs herein impleaded with others were defendants. A judgment of foreclosure and sale was entered. Out of the proceeds of the sale the referee was directed to pay the defendant herein $193,490.77, and to the plaintiffs herein the sum of $39,019.59. An appeal from a portion of this judgment was taken by one Stokes, who had unsuccessfully maintained that the participating agreement of the plaintiffs herein should be subordinated to his mortgage. As the appeal did not affect the adjudication of the right of the defendant herein to a foreclosure of the lien of its mortgage and a sale of the premises, but only to the distribution of a surplus over and above the amount due the defendant herein, if any there should be, the sale was not delayed pending the appeal, but was held on March 18, 1914.

The plaintiffs claim that the defendant herein agreed to bid in the property at a sum not in excess of the amount due, including all payments and disbursements required to be made, and would sell and convey said premises to the plaintiffs or to a party nominated by them for an amount equal to the cost of the premises to the defendant, title to be closed as of March 18, 1914; and the plaintiffs agreed to purchase or procure a purchaser at cost to defendant as of said date; the consideration to be paid, $185,000, by the party nominated by the plaintiffs executing a bond for the sum of $210,000 payable on March 18, 1918, with interest at five and

one-half per cent payable semi-annually; the bond to be secured by a mortgage on the premises; the balance of the purchase price, to wit, the excess of cost of the premises to the defendant, to be paid in cash or certified check at the time of the closing of the title; the defendant to issue a junior participating agreement in said mortgage to the plaintiffs in the sum of $25,000; title to be closed thirty days after the entry of the order affirming the judgment on the Stokes appeal above mentioned. It is alleged that it was further agreed that the defendant should promptly take title and appoint as agent to administer the property the person to be nominated by the plaintiffs, and all sums of money received by the defendant from said agent should be credited to the plaintiffs on adjustment of the closing of the sale. The plaintiffs further agreed to purchase a $10,000 junior participating interest in said mortgage by paying $5,000 on March 18, 1916, and $5,000 on March 18, 1917.

The plaintiffs further allege that, relying on said agreement, they refrained from bidding at the sale, and permitted the premises to be struck down to the defendant, and permitted a deed to be delivered to the defendant; and that they on their part duly performed the agreement; that plaintiffs have been ready, willing and able to perform the agreement, and at divers times have tendered performance thereof; that they have been ready at all times to nominate an agent to administer the property, but that the defendant refused to permit the plaintiffs to nominate such agent. The complaint further alleges that the date for closing the title on the deed had not been fixed, that no order had been entered affirming the judgment on the Stokes appeal, and that the appeal still stands open and not determined, or dismissed or otherwise disposed of; and that the plaintiffs at all times stood ready to close said title in thirty days after the entry of said order or other disposition of said appeal. It is then alleged that the defendant, without notice to the plaintiffs and in violation of their contract rights, had sold and transferred the said property.

It is admitted that there was no written agreement signed by the defendant, nor by any one in its behalf. It is claimed that an oral agreement was made and a written contract prepared, signed by the plaintiffs, but that it was never signed by the defendant, nor by it delivered to the plaintiffs.

This case was before us on an appeal from an order denying defendant's motion for judgment on the pleadings (197 App. Div. 484), and we then held that the complaint stated a good cause of action. Mr. Justice LAUGHLIN, writing for the court, said (p. 487): " It is not alleged that the defendant fraudulently intended to mis-

lead plaintiffs by making and then refraining from carrying out the agreement; but on the facts alleged if defendant should be permitted to interpose the invalidity of this agreement as a defense it would constitute a fraud on the plaintiffs and, therefore, equity should imply a trust and regard the defendant as trustee *ex maleficio.*" This established the law of the case. We will consider this case, upon the evidence adduced, in two aspects: (1) Assuming the agreement to have been made as set forth in the complaint; and (2) whether any such agreement was established.

(1) In order for the plaintiffs to succeed, it was necessary to prove that they duly performed, or tendered performance of, the agreement on their part. The date for closing the title was fixed at thirty days after the judgment was affirmed by the Appellate Division on the Stokes appeal, or the appeal dismissed or otherwise disposed of. The plaintiffs are attorneys at law and appeared in the foreclosure action for themselves and another defendant. The Stokes appeal was dismissed, without costs, by an order entered April 21, 1915, upon a written stipulation signed by the plaintiffs' firm and the other attorneys on the appeal. This disposition of the appeal was on the recommendation of the plaintiff Brown contained in a letter to the defendant's then attorneys, dated March 5, 1915. The time for the closing of the title was thus fixed as May 21, 1915. The plaintiffs made no tender of performance at that time nor at any subsequent time during which the defendant held the property, nor did they during such time assert any rights under the agreement.

The defendant sold and conveyed the property by deed dated April 1, 1919, and on March 16, 1920, the plaintiffs wrote to the defendant: " It having recently come to our notice that you have sold and transferred the premises known as No. 2041 Fifth Avenue, Borough of Manhattan, New York City, without notice to us and without our knowledge or consent, we hereby demand from you an accounting of all moneys received by you from the administration and sale thereof, and demand payment to us of the present value of the share in said property to which we would have been entitled in case you had fulfilled your agreement with and obligation to us, performance of which agreement on our part we now tender and demand that you perform the same on your part." This letter, sent nearly five years after the time fixed for the closing of title, was the first demand made upon defendant for performance of the contract, and is relied upon to prove a tender of performance by plaintiffs. A demand after a party has slept five years in default is insufficient to put the opposite party in default. And

a mere verbal tender, unaccompanied by a physical tender of the papers and cash to be delivered, amounts to nothing. It was impossible for the plaintiffs to perform the contract on their part; a bond and mortgage was to be given by them to defendant for $210,000, payable on March 18, 1918, with interest payable semi-annually; the plaintiffs were to purchase a junior participation in the mortgage by paying $5,000 March 18, 1916, and $5,000 on March 18, 1917, all of which was possible on May 21, 1915, none of which was possible March 16, 1920. The plaintiffs alleged due performance and tender, and failed to prove either. They proved their own default and abandonment of their rights under the contract for five years. It is argued that this delay cannot be asserted because plaintiffs' laches is not pleaded by the defendant. Where plaintiffs' proof shows laches, it is not necessary for the answer to have pleaded the defense, for it is well settled that where in a suit in equity the staleness of plaintiff's claim necessarily appears upon the proof of his case, it may be availed of by the court in the final relief to be decreed, though laches is not pleaded, as the relief to be administered in equity will be adapted to the exigencies of the case as they exist at the close of the trial. (*Kellogg* v. *Kellogg*, 169 App. Div. 395, 410; affd., 224 N. Y. 597.) Where the plaintiffs have neglected to assert their rights or perform the conditions of the contract on their part, and have lain dormant for years, the defendant is justified in believing that they have permanently abandoned the contract. After conditions have changed and defendant has parted with the property, it is too late for the plaintiffs to then become active and demand the impossible. Nothing can move a court of chancery but equity and good conscience. To grant the relief demanded by the plaintiffs would violate equity and shock the conscience.

(2) The plaintiffs failed to prove that the contract was made. The most that can be claimed is that a proposition was made by the plaintiffs and never accepted by the defendant. The plaintiff Brown carried on the negotiations on plaintiffs' behalf. He first submitted a proposition to defendant's attorney and was told to communicate with Mr. Lovejoy, the defendant's president. A letter by Brown to Lovejoy was offered in evidence by plaintiffs, dated March 16, 1914, in which it was suggested that the property be withdrawn from sale and not readvertised until after the Appellate Division decision in the Stokes appeal; and then the plaintiffs would bid or procure some one to bid at the foreclosure sale an amount sufficient to cover the defendant's claim, interest and taxes; and have a bond and mortgage executed by a corporation to be formed for that purpose. On March seventeenth he

sent another letter to Lovejoy in which he proposed that the mortgage should bear five per cent interest instead of five and one-half per cent. Brown testified that he had an interview with Lovejoy and defendant's attorneys on March 17, 1914, at which the proposition to postpone the sale was definitely rejected, and he made the proposition that the defendant buy in the property, and the substance of the alleged agreement was discussed. Brown testified, " At the end of the interview Mr. Lovejoy said that he was busy and this was all the time that he could give to the matter; and I said that I had drawn a draft of an agreement generally on those lines, that I would go immediately back to my office, would prepare the agreement; " that he returned later and submitted the written agreement, and Lovejoy said the agreement was all right but he would want counsel to examine it as to form. Thereafter Brown saw defendant's attorney, who informed him that the board of directors or the executive committee would not consent to the agent of the plaintiffs going into control of the property. Whereupon Brown said that he and his associates would insist on that provision, that it was too late to talk about the board of directors or the executive committee, that the president had not said anything with reference to any board or executive committee. And that ended the matter until the demand was made on March 16, 1920.

The position assumed by the plaintiffs is that the implied assent of the president to this agreement bound the defendant corporation. The plaintiffs were not laymen, but were lawyers, and so must have known that the power generally exercised by the president of a business corporation to make binding contracts on behalf of the corporation was not possessed by presidents of life insurance companies with reference to loans, investments and disposition of its property. Section 100 of the Insurance Law provides: " No investment or loan shall be made by any such life insurance corporation unless the same shall first have been authorized by the board of directors or by a committee thereof charged with the duty of supervising such investment or loan. No such corporation shall subscribe to or participate in any underwriting of the purchase or sale of securities or property, or enter into any transaction for such purchase or sale on account of said corporation jointly with any other person, firm or corporation; nor shall any such corporation enter into any agreement to withhold from sale any of its property, but the disposition of its property shall be at all times within the control of its board of directors." (See Ins. Law, § 100, as amd. by Laws of 1913, chap. 596. Since amd. by Laws of 1916, chap. 121; Laws of 1919, chap. 396, and Laws of 1921, chap. 488.)

The agreement which the plaintiffs sought came directly within the purview of this section of the Insurance Law. It provided for a sale of the property of the company and a loan to be made by the company to the purchaser, and for a joint control of the property by an agent to be selected by the other party to the contract. It, therefore, had to be authorized by the board of directors or executive committee, and the oral assent of the president, even if he had given it, would not have bound the company. The president was an agent whose authority was limited by law, and the plaintiffs, when dealing with him, were charged with knowledge of the limitation of his authority.

When this case was before us on the pleadings, we held that, if it should appear that the president had assented to the agreement, and in reliance thereupon the plaintiffs had refrained from bidding, and the defendant should set up the Statute of Frauds as a defense, it would constitute a fraud. As the case now appears upon the plaintiffs' evidence alone, a very different condition is shown from that outlined in the complaint. The fact that no agreement on the part of the plaintiffs to refrain from bidding was stated was noted; but we thought such an agreement might be implied. (197 App. Div. 487.)

In the plaintiffs' letter of March 16, 1914, in which they requested that the foreclosure sale be postponed until after the decision of the appeal in the Stokes case, the plaintiffs further said: " We would not care to purchase at a foreclosure sale with knowledge of an appeal pending under which the judgment might be set aside." Thus it appears that the plaintiffs did not forego the right to bid, in reliance upon this agreement, nor can we imply such an obligation from the contract. Two days before the sale they had announced that they would not bid at the sale, and then attempted to negotiate a contract for a subsequent sale. The case of *Wheeler* v. *Reynolds* (66 N. Y. 227) is directly applicable to the case made by the plaintiffs' own evidence herein. In the *Wheeler* case the court said: " The mere refusal to perform a parol agreement, void under the statute, may be a moral wrong, but it is in no sense a fraud in law or equity. * * * ' The fraud which will convert the purchaser at a sheriff's sale into a trustee *ex maleficio* of the debtor must have been fraud at the time of the sale. Subsequent crime will not answer any more than subsequent payment of the purchase money will convert an absolute purchase into a naked trust. Where the purchaser at a sheriff's sale promises to hold for the debtor and afterwards refuses to comply with his engagement, the fraud, if any, is not at the sale, not in the promise, but in its subsequent breach. That is too late. It is abundantly

settled that equity will not decree such a purchaser to be a trustee, unless there is something more in the transaction than the mere violation of a parol agreement. * * * It may, in all cases, be assumed that where a promise is made to buy or to hold for another confidence is invited and more or less reposed. So it is in every parol contract for the purchase of lands; but the Statute of Frauds would be worse than waste paper if a breach of the promise created a trust in the promisor which the contract itself was insufficient to raise.' " (See, also, *Woolley* v. *Stewart,* 222 N. Y. 347; *Burns* v. *McCormick,* 233 id. 230.)

There was no partial performance of the alleged oral agreement proved.

From the foregoing reasons it follows that the motion to dismiss the complaint at the conclusion of the plaintiffs' case should have been granted. The findings of fact and conclusions of law should be reversed, and the judgment reversed, with costs to appellant, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and McAVOY, JJ., concur.

Judgment reversed, with costs to appellant, and complaint dismissed, with costs.